UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,

                          Plaintiff,

            v.

TIVO INC.,

                          Defendant.

CASE NO. C11-00134-RSM

ORDER GRANTING
DEFENDANT'S MOTION TO STAY
PURSUANT TO 28 U.S.C. § 1659
AND TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(A)

## I. INTRODUCTION

This matter comes before the Court upon Defendant's Motion to Stay Pursuant to 28 U.S.C. § 1659 and to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).  (Dkt. #21).  For the reasons set forth below, the Court GRANTS Defendant's motion in its entirety.

## II. BACKGROUND

On January 24, 2011, Plaintiff Microsoft Corporation ("Microsoft") filed the instant action against Defendant TiVo Inc. (TiVo).  Dkt. #1.  On the same day, Microsoft filed a companion suit with the International Trade Commission (ITC) asserting the same patent rights against TiVo.  *See* Dkt. #22, Ex. B.  Related litigation first began in the Eastern District of Texas

1   in August 2009, where TiVo sued AT&T for patent infringement and Microsoft intervened on

2   behalf of AT&T.  Microsoft then filed a separate patent infringement suit against TiVo in August

3   2010 in the Northern District of California.  All of the suits concern interactive television

4   technology used in set-top boxes.  Although the asserted patents in the California action are not

5   the same as those asserted here, there is significant overlap between the two suits.  For example,

6   the '748 patent in California shares figures, specifications and claim terms with the '838 patent

7   asserted here.  Dkt. #21, p. 10.  Patents in both cases share some of the same inventors.  *Id*., p.

8   11.

9        TiVo maintains its headquarters in Alviso, in the Northern District of California. Dkt.

10  #23, ¶ 3.  TiVo employs over 500 individuals, the majority of whom work in Alviso.  *Id*., ¶ 4.

11  Nearly all of the TiVo's documents are located at its headquarters, where the company also

12  developed the source code of the software that runs the accused TiVo products.  TiVo contends

13  that various witnesses reside in or near northern California.  These include Microsoft employees

14  in charge of the design and operation of Mediaroom, as well as non-party witnesses with relevant

15  knowledge of related prior art.  Dkt. #21, pp. 5-6.

16       Microsoft's headquarters are in Redmond, in the Western District of Washington.  The

17  research and development which led to the four patents asserted in this case took place in this

18  District, and documents related to the inventions are located at its headquarters.  Dkt. #24, p. 11.

19  All of the nine named inventors continue to reside in Washington, and three of them are current

20  Microsoft employees.  Dkt. #25, Ex. 4.  However, since the mid-1990's, Microsoft's interactive

21  television business has been based in Mountain View, in the Northern District of California.

22  Dkt. #22, Ex. A.  Microsoft uses the inventions claimed in the patents-in-suit in its Mediaroom

23

24

1  software, which was developed and is tested and maintained at its Silicon Valley campus.  *Id.*,

2  Ex. B, C.

3       TiVo argues that under 28 U.S.C. § 1659 the Court must issue a stay in the current action

4  until the ITC proceedings become final, and that a subsequent transfer of venue to the Northern

5  District of California is appropriate.  TiVo contends that transfer is justified due to both

6  companies' significant contact with northern California, and the fact that many non-party

7  witnesses likely reside there.  Citing Microsoft's decision to first file a related lawsuit in the

8  Northern District of California, TiVo also argues that transfer will promote judicial economy by

9  confining the suits to a single forum.  Microsoft argues that the § 1659 stay precludes this Court

10  from ruling on TiVo's motion to transfer venue, and that in any case transfer is inappropriate.

11  Microsoft emphasizes its choice to file suit in its home forum, where the inventions were

12  developed and reduced to practice and a significant number of witnesses still reside.

### III. DISCUSSION

**A.  The § 1659 Motion to Stay**

15       TiVo requests that the Court issue a stay in this matter pursuant to 28 U.S.C. § 1659,

16  which requires that a district court, upon the request of the respondent of parallel ITC

17  proceedings, to "stay, until the determination of the Commission becomes final, proceedings in

18  the civil action with respect to any claim that involves the same issues involved in the proceeding

19  before the Commission…"  Microsoft does not dispute that such a stay is mandatory in this case.

20  The current action involves the same patent claims that Microsoft has asserted against TiVo in

21  the ITC proceedings.  Accordingly, the Court grants TiVo's motion to stay.  The stay will remain

22  in effect until the ITC determination becomes final.  28 U.S.C. § 1659(a).

23

24

1    Microsoft contends that a stay imposed under 28 U.S.C. § 1659(a) precludes this Court

2    from subsequently ruling on TiVo's motion to transfer venue.  TiVo argues that the motion to

3    transfer does not fall under the purview of 28 U.S.C. § 1659(a) because the motion does not

4    address a "claim" or "same issue" involved in the ITC proceeding.  The Court agrees with

5    TiVo's interpretation of the statute.  It would make little sense for the stay to encompass

6    proceedings related to procedural matters that are not before the ITC.[1]  The legislative history of

7    § 1659 shows that Congress intended that the stay affect merits issues that involve "questions of

8    patent validity, infringement, and any defenses that might be raised in both proceedings."[2]  H.R.

9    Rep. No. 103-316, at 705, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4076.   Because the motion to

10   transfer is entirely unrelated to the merits of Microsoft's patent claims, the Court may transfer

11   the case to another district subsequent to issuing the stay.

12   **B. The § 1404 Motion to Transfer Venue**

13     1. <u>Standard</u>

14     28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

15   interest of justice, a district court may transfer any civil action to any other district or division

16   where it might have been brought."  The purpose of this section is to "prevent the waste of time,

---

18   [1] Microsoft cites various cases in support of the argument that *all* issues concerning relevant
     patent claims must be stayed. Dkt. #24, pp. 5-6.  None of those cases, however, concerns the
     type of procedural proceedings at issue here.  They concern substantive proceedings inextricably
19   tied to the merits of the patent claims.  *See In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir.
     2007) (damages proceedings); *Micron Tech., Inc. v. Mosel Vitelic Corp.*, No. CIV 98-0293-S-
20   LMB, 1999 WL 458168, at *3 (D. Idaho Mar. 31, 1999) (damages and willfulness proceedings);
     Alloc, Inc. v. Unilin Décor N.V., No. Civ. A 03-253-GMS, 2003 WL 21640372, at *1 (D. Del.
21   July 11, 2003) (substantive proceedings regarding a related claim not before the ITC).
     [2] In *Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-468-JVS, 2005 WL 5925585, at *2 (C.D.
22   Cal. Sept. 26, 2005), a district court in the Central District of California recognized the same
     legislative history of § 1659 and found that the stay did not encompass proceedings to determine
23   the applicability of a forum selection clause.  Pursuant to the forum selection clause, the court
     later transferred the case to another venue while the stay was still in effect.  *See Broadcom Corp.*
24   *v. Qualcomm Inc.*, No. SACV 05-468-JVS, 2005 WL 5925582, at *4 (C.D. Cal. Dec. 5, 2005).

ORDER GRANTING DEFENDANT'S MOTION TO STAY PURSUANT TO 28 U.S.C. § 1659 AND TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) - 4

1    energy, and money and to protect litigants, witnesses and the public against unnecessary

2    inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal

3    quotations and citation omitted).  The statute "displaces the common law doctrine of *forum non*

4    *conveniens*" with respect to transfers between federal courts.  *See Decker Coal Co. v.*

5    *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

6         Section 1404(a) is not simply a codification of the common law doctrine.  In passing §

7    1404(a), Congress "intended to permit courts to grant transfers upon a lesser showing of

8    inconvenience" than was needed for dismissal under the doctrine of *forum non conveniens*.

9    *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).  The decision to transfer an action is left to the

10   sound discretion of the trial court, and must be determined on an individualized basis.  *See*

11   *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

12        The statute has two requirements.  First, the district to which defendants seek to have the

13   action transferred must be one in which the action "might have been brought."  28 U.S.C. §

14   1404(a).  Second, the transfer must be for the "convenience of parties and witnesses," and "in the

15   interest of justice."  *Id.*  Here, the Court finds that the action clearly could have been brought in

16   the Northern District of California.  TiVo is headquartered there, and there is no dispute that the

17   Northern District of California would have subject matter jurisdiction over the claims.

18   Therefore, the primary issue for the Court to resolve is whether the second requirement of §

19   1404(a) has been met.

20        A determination of whether transfer is appropriate under § 1404(a) involves "subtle

21   considerations" involving several private interest factors.  *See Commodity Futures Trading*

22   *Commission v. Savage*,  611 F.2d 270, 279 (9th Cir. 1979).  These factors include, "(1) the

23   location where the relevant agreements were negotiated and executed, (2) the state that is most

24

1   familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties'

2   contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen

3   forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of

4   compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of

5   access to sources of proof." *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 -499 (9th Cir.

6   2000).  Relevant public factors drawn from the traditional *forum non conveniens* analyses

7   include the public's interest in adjudicating the controversy in the chosen forum and the

8   pendency of related litigation in the transferee forum.  *Decker Coal,* 805 F.2d at 843.  *See also*

9   *Jones,* 211 F.3d at 499 ("We also conclude that the relevant public policy of the forum state, if

10  any, is at least as significant a factor in the § 1404(a) balancing.").

11      2.  Analysis

12          a.  *Private Interest Factors.*

13          Because the litigation has significant connections to both forums, the majority of the

14  private interest factors weigh neither for nor against transfer.  The record indicates that relevant

15  technology, documents and witnesses are tied to both California and Washington.  TiVo is

16  headquartered in the Northern District of California, where nearly all of its employees and

17  documents are located.  Microsoft's headquarters are in the Western District of Washington,

18  where the relevant inventions were developed and the inventors still reside.  Factors concerning

19  relevant events, party and non-party witness contacts with the forum, and litigation costs are

20  therefore neutral.  In addition, because only federal claims are asserted in this action, neither

21  state is more familiar with the governing law.

22          One factor that weighs against transfer is the plaintiff's choice of forum.  There is a

23  strong presumption in favor of plaintiff's choice of forum.  *See Decker Coal*, 805 F.2d at 843

24  ("The defendant must make a strong showing of inconvenience to upset the plaintiff's choice of

1    forum.").  Recent authority suggests that this presumption has been overstated, and courts have

2    given less deference to the plaintiff's choice of forum where the action has little connection with

3    the chosen forum.  *See, e.g., Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1157-58 (S.D.Cal. 2005)

4    (collecting cases).  The present action has sufficient connections with this district to entitle

5    Microsoft's choice of forum some level of deference.  Microsoft's headquarters are located here,

6    and Microsoft states that the asserted patents were conceived and reduced to practice at the

7    Redmond campus.  Dkt. #24, p. 3.  Furthermore, all nine of the named inventors still reside in

8    this District.  Dkt. #25, Ex. 4.  This factor weighs in favor of Microsoft.

9            On the other hand, the factor concerning the ease of access to sources of proof weighs

10   in favor of transfer.  "In patent infringement cases, the bulk of the relevant evidence usually

11   comes from the accused infringer.  Consequently, the place where the defendant's documents are

12   kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338,

13   1345 (Fed. Cir. 2009) (*quoting Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325,

14   330 (E.D.N.Y. 2006).  Most if not all of the witnesses and documents related to TiVo's defense

15   are located in northern California.  This factor favors Tivo.

16           *b.  Public Interest Factors*

17           The public interest factors favor transfer to the Northern District of California.

18   Regarding the public's interest in adjudicating the controversy in the chosen forum, Microsoft

19   contends that there is a strong local interest in deciding the case in this forum because the

20   asserted patents were developed at the company's headquarters here, and all of the inventors still

21   live in Washington.  TiVo argues that California's interest is greater because the allegedly

22   infringing technology and Microsoft's Mediaroom software are developed and maintained in

23   northern California.  Regardless of where the patents were initially developed and reduced to

24

1    practice, the locus of both company's set-top box development is northern California, where the

2    community has a stronger interest in resolution of the case.  This factor favors TiVo.

3           The factor concerning the pendency of related litigation in the transferee forum strongly

4    supports TiVo's motion to transfer.  "Consideration of the interest of justice, which includes

5    judicial economy, may be determinative to a particular transfer motion, even if the convenience

6    of the parties and witnesses might call for a different result."  *Regents of the University of*

7    *California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (internal quotations and

8    citation omitted).  The litigation of related claims in the same court is favored so as to avoid

9    duplicitous litigation and inconsistent results.  *See Durham Productions, Inc., v. Sterling Film*

10   *Portfolio, Ltd., Series A,* 537 F.Supp. 1241, 1243 (S.D.N.Y. 1982).  Prior to filing the current

11   suit, Microsoft filed an action against TiVo in the Northern District of California, alleging

12   infringement of various patents related to the same set-top box technology at issue in the current

13   suit.  While that litigation may be at a relatively early stage, the interest of judicial economy will

14   be best served if the related cases are confined to a single court before they progress further.

15   Microsoft's arguments against transfer are undermined by its decision to first file a related and

16   overlapping suit in the Northern District of California.  This factor weighs heavily in favor of

17   TiVo.

18                                    *        *        *

19           The interests of justice favor transfer of this case to the Northern District of California.

20   Factors concerning the location of evidence, party and non-party witnesses are neutral.  Although

21   there is a strong presumption in favor of Microsoft's choice of its home forum, this consideration

22   does not outweigh the public's interest in judicial economy and the litigation of significantly

23   related cases in a single forum.  Most of TiVo's contacts and much of Microsoft's related

24

ORDER GRANTING DEFENDANT'S MOTION TO STAY PURSUANT TO 28 U.S.C. § 1659 AND TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) - 8

1   business are located in the Northern District of California, where Microsoft chose to file the

2   earlier related action.  The Court finds that transfer of venue is appropriate.

3                                          **IV. CONCLUSION**

4          Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

5   and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion

6   to Stay Pursuant to 28 U.S.C. § 1659(a) and to Transfer Venue pursuant to 28 U.S.C. § 1404(a)

7   (Dkt. #21) is GRANTED.

8          The Clerk is directed to forward a copy of this order to all counsel of record.

9

10         Dated this 19th day of May 2011.

11

12

13

14         RICARDO S. MARTINEZ
           UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24